SEYFARTH SHAW LLP
Jesse L. Miller (SBN 183229)
jmiller@seyfarth.com
Afshin Najafi (SBN 335582)
anajafi@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile:(415) 397-8549

Attorneys for Defendant
FlixBus, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA KING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIXBUS, INC.,<br><br>Defendant. | Case No. 5:24-cv-2108-MWC-SP<br><br>**DEFENDANT FLIXBUS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 28, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Michelle W. Court<br>Courtroom: 6A |

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 28, 2025, at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Michelle W. Court, in the United States District Court for the Central District of California, Courtroom 6A, 350 West 1st Street, Los Angeles, California 90012, Defendant FlixBus, Inc. ("Defendant") will, and hereby does, move to dismiss the Complaint (Dkt. No. 1) of Plaintiff Vanessa King ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction because Plaintiff has no Article III standing; the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14501, expressly preempts all of Plaintiff's claims; and the Complaint further fails to state a claim upon which relief can be granted.

The motion is based on this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities in Support of the Motion to Dismiss, the Declarations of Lisa M. Zemanek and Matteo Maronati, any additional briefing on this subject, and any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 25, 2024.

DATED: December 16, 2024 SEYFARTH SHAW LLP

By: */s/ Jesse L. Miller*
Jesse L. Miller
Afshin Najafi
Attorneys for Defendant
FlixBus, Inc.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. FlixBus' Alleged Use of the Facebook Tracking Pixel Tool ..... 2

B. Plaintiff's Bus Ticket Purchase on FlixBus' Website ..... 3

C. This Lawsuit ..... 3

III. ARGUMENT ..... 4

A. Plaintiff Has Not Suffered an Article III Injury in Fact ..... 4

1. Standards For Motions To Dismiss Pursuant To Rule 12(b)(1) ..... 4

2. Plaintiff's Complaint Fails to Facially Allege a Concrete Harm ..... 5

3. Plaintiff Cannot Factually Establish a Concrete Harm ..... 6

4. Plaintiff Lacks Standing to Seek Injunctive Relief ..... 7

B. Plaintiff Failed to Allege a Plausbile CIPA or Invasion of Privacy Claim ..... 7

1. Standards For Motions To Dismiss Pursuant To Rule 12(b)(6) ..... 7

2. The ICCTA Preempts All of Plaintiff's Claims ..... 8

a. FlixBus is a "Broker" Under the ICCTA ..... 8

b. Plaintiff's Claims Are Related to FlixBus' Services ..... 9

3. Plaintiff's Consent to the Alleged Data Practices Bars Her Claims 11

a. Plaintiff Consented to FlixBus' Privacy Policy and T&Cs ..... 12

b. Plaintiff Consented to Facebook's Terms of Service ..... 14

4. Plaintiff's Class Claims are Barred by a Class Action Waiver ..... 15

5. Plaintiff Failed to Allege a Plausible CIPA Claim ..... 16

a. Plaintiff's CIPA Claim is Barred by the Statute of Limitations ..... 16

b. Plaintiff Failed to Plead Sufficient Facts Showing FlixBus Aided and Abetted Facebook to Commit Wrongdoing ..... 16

c. Plaintiff Failed to Plead Sufficient Facts Demonstrating a Communication Was Intercepted in Transit ..... 18

**TABLE OF CONTENTS (CONTINUED)**

**Page(s)**


d. Plaintiff Failed to Plead Interception of Protected Communication Content ..... 19

6. Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution ..... 20

IV. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................. 8, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................. 7, 18

*In re: BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023).....................................................7

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)........................................................ 16

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023).....................................................6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......................................................... 16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..........................................................................................7

*Deteresa v. Am. Broad. Cos.*,
121 F.3d 460 (9th Cir. 1997)......................................................................... 22

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ..................................................... 2, 21

*Fudge v. Delta Air Lines, Inc.*,
2024 WL 4445985 (C.D. Cal. Oct. 4, 2024)............................................... 9, 10

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......................................................... 13

*Ghazizadeh v. Coursera, Inc.*,
2024 WL 3455255 (N.D. Cal. June 20, 2024)...........................................14, 16

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 8

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 22

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 22

*Jones v. Peloton Interactive, Inc.*,
2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) .......... 7

*Kozak v. Hillsborough Pub. Transp. Comm'n*,
695 F. Supp. 2d 1285 (M.D. Fla. 2010) .......... 11

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 5

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .......... 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 21, 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 19

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 5, 6

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 15

*Ortiz v. Ben Strong Trucking, Inc.*,
624 F. Supp. 3d 567 (D. Md. 2022) .......... 8

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 13

*Rahman v. Marriott Int'l, Inc.*,
2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ........................................................ 6

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) ........................................................ 11

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008) ........................................................ 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................ 4, 5

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ........................................................ 13

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........................................................ 13, 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................ 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................................ 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................ 4

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................ 6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................ 20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................ 20

**State Cases**

*People v. McCoy*,
25 Cal. 4th 1111 (2001) ........................................................ 17

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Jan. 05, 2023) ........................................................ 19

*Catsouras v. Dep't of Cal. Highway Patrol*,
181 Cal. App. 4th 856 (2010)........................................................................ 22

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011).......................................................................... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ...................................................................................... 21

*In re Lynette G.*,
54 Cal. App. 3d 1087 (1976)........................................................................... 18

*In re Meagan R.*,
42 Cal. App. 4th 17 (1996) ............................................................................ 18

*Montalti v. Catanzariti*,
191 Cal. App. 3d 96 (Ct. App. 1987)................................................................ 16

*People v. Beeman*,
35 Cal. 3d 547 (1984) ................................................................................... 17

*People v. Laster*,
52 Cal. App. 4th 1450 (1997).......................................................................... 18

*People v. Perez*,
35 Cal. 4th 1219 (2005) ................................................................................ 17

*Urbaniak v. Newton*,
226 Cal. App. 3d 1128 (1991)......................................................................... 22

**Federal Statutes**

49 U.S.C § 13102(2) ................................................................................ 8, 9

49 U.S.C § 13102(14).......................................................................................... 8

49 U.S.C. § 14501(b)(1) ........................................................................8, 10, 11

49 U.S.C. § 14501(c)(1).......................................................................8, 9, 11

**State Statutes**

Airline Deregulation Act.................................................................................. 9, 10

C.C.P. § 340(a).................................................................................................. 16

Cal. Pen. Code § 631(a)(4) .......... 17

Cal. Penal Code § 1 .......... 17

Cal. Penal Code § 31 .......... 17

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 637.2(a) .......... 17

California Invasion of Privacy Act, Penal Code §631 .......... *passim*

Interstate Commerce Commission Termination Act .......... *passim*

**Rules**

Federal Rule of Civil Procedure Rule 12(b)(1) .......... 4

Rule 12(b)(6) .......... 7

**Regulations**

49 C.F.R. § 374.303 .......... 11

**Constitutional Provisions**

California Constitution .......... *passim*

U.S. Constitution Article III .......... *passim*

# I. INTRODUCTION

FlixBus, Inc. offers customers the ability to purchase bus tickets to various destinations through its website (www.flixbus.com). When a customer purchases a bus ticket on FlixBus' website, they acknowledge reading its Privacy Policy and agree to FlixBus' Terms and Conditions of Purchase, which detail FlixBus' practices for data collection and sharing with third-parties.

Plaintiff King is a customer who allegedly purchased a bus ticket from FlixBus' website. No one disputes that FlixBus' Terms and Conditions of Purchase expressly authorizes it to use Facebook's digital tool—the Facebook Tracking Pixel—to collect information about Plaintiff to serve Plaintiff with relevant advertisements about FlixBus' services. Plaintiff nevertheless asserts claims for violation of the California Invasion of Privacy Act, Penal Code section 631 ("CIPA") and invasion of privacy under the California Constitution based on the theory that Plaintiff could not have consented to the Terms and Conditions.

For multiple reasons, Plaintiffs' Complaint should be dismissed.

***First***, Plaintiff lacks standing under Article III of the U.S. Constitution because she failed to allege a concrete harm beyond a statutory violation and only asserts vague allegations of disclosing "personally identifiable information" and travel information. FlixBus' records also show no booking by Plaintiff, undermining her standing. She further lacks standing for injunctive relief, as future use of the website implies consent to data practices.

***Second***, to the extent the Court could find Plaintiff suffered a concrete harm (which she has not), the Complaint fails to state a viable claim for a violation of CIPA section 631 or invasion of privacy. As applicable to *both* claims, the Interstate Commerce Commission Termination Act ("ICCTA") preempts Plaintiffs' claims. Plaintiffs' claims relate to a core part of the services FlixBus provides: access to transportation via buses through the offer and sale of fares on FlixBus' website. Moreover, both claims are barred because Plaintiff consented to FlixBus' data practices by agreeing to its Privacy Policy

and Terms and Conditions upon purchasing a ticked from FlixBus' website, which included the use of tracking tools like the Facebook Pixel Tracker. Her active Facebook account also implies consent to Facebook's data collection practices, including sharing information with partners like FlixBus. And, as for her class allegations, Plaintiff waived her right to bring a class action by agreeing to the class action waiver in FlixBus' Terms and Conditions of Purchase.

As for Plaintiff's CIPA claim alone, that claim is barred by the applicable one-year statute of limitations. Even if not time-barred, there would be no liability under the first clause of CIPA section 631(a) because that clause only applies to *telephonic* communications, not the *internet* communications Plaintiff complains about. Furthermore, Plaintiff has failed to allege sufficient facts for the requisite elements of her CIPA claim, namely that (i) FlixBus intentionally aided and abetted Facebook's unlawful conduct, (ii) the communications at issue were "intercepted in transit;" and (iii) the protected "contents" of communications were intercepted (as opposed to mere "record" information).

Plaintiff's invasion of privacy claim fares no better because (i) Plaintiff's allegations regarding her "personally identifiable information" and travel itinerary are insufficient to establish a legally protected interest; (ii) in the alleged circumstances, Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information she provided on FlixBus' website; and (iii) the alleged data sharing does not constitute an "egregious breach of social norms."

## II. STATEMENT OF FACTS

### A. FlixBus' Alleged Use of the Facebook Tracking Pixel Tool

Facebook provides web-based advertising services to help FlixBus and others "better reach and serve people who might be interested in their . . . services." Compl. ¶ 26.[1] Plaintiff contends that, in order to use Facebook's advertising services, FlixBus

[1] By referencing the Complaint's allegations in connection with this motion to dismiss, Defendant is not admitting their truth.

"integrates" the "Facebook Tracking Pixel" tool on its website (www.flixbus.com), including the part of its website offering consumers the ability to book bus tickets. *Id.* ¶¶ 31-33. When a customer "enters their trip information (e.g. travel dates, departure city, arrival city, and trip dates)," the pixel tool allegedly sends that information to Facebook. *Id.* ¶ 29. Plaintiff alleges that this allows FlixBus to then use Facebook's services to deliver "targeted advertisements" of FlixBus' "services" to those same consumers "on Facebook." *Id.* ¶¶ 24, 26, 45.

As part of the "checkout process," FlixBus requires purchasers to confirm they have "read the Privacy Policy" and "agree to the T&C of Booking." *Id.* ¶ 50; Maronati Decl. ¶¶ 3-4. FlixBus' Privacy Policy discloses that FlixBus and its "partners" (i.e., Facebook) "may use cookies, web beacons, embedded scripts, pixels, tags, session replay tools, SDKs, and other identification technologies . . . to identify, to locate or to profile you" and " which may include sending you an ad on a third-party service after you have left the [website] (i.e., "retargeting")." Maronati Decl. Ex. A. FlixBus' Terms and Conditions of Purchase similarly requires customers to agree to the same data sharing practices disclosed in the Privacy Policy. *Id.* Ex. B.

**B. Plaintiff's Bus Ticket Purchase on FlixBus' Website**

Plaintiff alleges she is a California resident who "has actively maintained a Facebook account" and allegedly, "[i]n or around October 2023, Plaintiff visited [FlixBus'] Website to book a bus ticket from Los Angeles, California to Las Vegas, Nevada." Compl. ¶¶ 5-7. While booking her bus ticket, Plaintiff alleges FlixBus "assisted Facebook with intercepting her communications, including communications that contained her personally identifiable information and details regarding her travel itinerary." *Id.* ¶ 7. The Complaint alleges that the "Facebook Tracking Pixel" transmitted this booking information to Facebook. *Id.* ¶¶ 7, 32-33.

**C. This Lawsuit**

On October 2, 2024, Plaintiff filed her Complaint against FlixBus for allegedly "sharing" Plaintiffs' "personally identifiable information and details regarding her travel

itinerary" entered on its website "to book a bus ticket" with Facebook through use of the Facebook pixel tool. *Id*. Plaintiff asserts that FlixBus' alleged conduct violated CIPA and constitutes an invasion of privacy. *Id.* ¶¶ 66-86. Plaintiff brings her claims on behalf of herself and a putative "class consisting of all persons in California who have a Facebook account and who booked travel arrangements from www.flixbus.com." *Id.* ¶ 57.

## III. ARGUMENT

### A. Plaintiff Has Not Suffered an Article III Injury in Fact

#### 1. Standards For Motions To Dismiss Pursuant To Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "minimum of standing" to bring a lawsuit requires three elements: (1) plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

To demonstrate an "injury in fact," a plaintiff must establish an "'invasion of a legally protected interest' which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016). Indeed, the Supreme Court rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 426 (2021).

Moreover, a jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "[I]n a factual attack, the challenger disputes

the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citations omitted).

**2. Plaintiff's Complaint Fails to Facially Allege a Concrete Harm**

Article III standing challenges in the privacy context focus on whether the plaintiff suffered an "injury in fact," which is an actual, concrete injury, as opposed to a purely statutory violation without any actual individual injury or harm. It follows that "a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023).

Federal courts routinely hold that a statutory violation (CIPA or otherwise) *alone* does not satisfy the injury in fact prong of Article III standing. Rather, a plaintiff must allege "a concrete harm that bears a close relationship to the substantive right of privacy (i.e., an individual's right to control information concerning his or her person)." *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023). Indeed, a "plaintiff must identify the specific personal information she disclosed that implicates a protectible privacy interest to survive a motion to dismiss." *Mikulsky*, 682 F. Supp. 3d at 864 (citations and quotations omitted).

In *Mikulsky*, the plaintiff's conclusory allegation that she disclosed "personal information" via defendant's website was insufficient to establish that she suffered a concrete harm because, based on that allegation alone, the Court was unable "to determine whether Plaintiff has a protectable privacy interest in that information." *Mikulsky*, 682 F. Supp. 3d at 864. Here, as in *Mikulsky*, Plaintiff's allegations similarly fail to implicate a protectible privacy interest.

Plaintiff merely alleges that "Defendant assisted Facebook with intercepting her communications, including communications that contained her personally identifiable

information and details regarding her travel itinerary. Such details include the departure and return date, the origin and destination cities, and the number of travelers in her party." Compl. ¶ 7. The allegation regarding Plaintiff's "personally identifiable information" alone are insufficient and vague to allow the Court "to determine whether Plaintiff has a protectable privacy interest in that information." *Mikulsky*, 682 F. Supp. 3d at 864.

As for the details of Plaintiff's alleged travel itinerary, the dissemination of that information for routine commercial purposes (i.e., marketing and advertising) alone is not sufficient to show an invasion of a protectible privacy interest. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (discussing "high bar" cases holding that disclosure of "routine commercial information" like home addresses, geolocation data, and device identifier information do not state an actionable claim for invasion of privacy); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (holding the collection of a customer's ZIP code to obtain their address for marketing purposes did not constitute an invasion of privacy because this "conduct is not an egregious breach of social norms, but routine commercial behavior"); *Rahman v. Marriott Int'l, Inc.*, 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) (holding that contact information, gender, birth date, and loyalty account number "lack[ed] the degree of sensitivity required" for standing).

### 3. Plaintiff Cannot Factually Establish a Concrete Harm

In *Byars v. Sterling Jewelers, Inc.*, the court examined a factual attack on a CIPA claim where the defendant provided unchallenged evidence (an employee declaration) showing no record of the plaintiff ever using the chat bot on the defendant's website. 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023). Despite shifting the burden to plaintiff to present evidence supporting her claims (i.e., she actually used the chatbot), plaintiff failed to address the declaration or provide any evidence of her alleged communications. As a result, the court concluded there was no proof the plaintiff disclosed private information and, therefore, plaintiff did not suffer an "injury in fact" sufficient to

establish subject matter jurisdiction.

Here, Plaintiff alleges that "[i]n or or around October 2023, Plaintiff visited the Website to book a bus ticket from Los Angeles, California, to Las Vegas, Nevada." Compl. ¶ 7. Based on a review of FlixBus' internal records, no records exist for Plaintiff's alleged travel booking via FlixBus' website. Zemanek Decl. ¶ 5. Unless Plaintiff puts forth evidence that she did book travel via FlixBus' website as alleged, Plaintiff did not disclose "private information" and did not suffer an "injury in fact."

**4. Plaintiff Lacks Standing to Seek Injunctive Relief**

Plaintiff seeks injunctive relief under her CIPA claim, but she lacks Article III standing to obtain such. *See* Compl. ¶ 78. Specifically, she claims to be harmed by Facebook's interception of her data "without . . . consent." *Id.* ¶¶ 7, 71, 77. Plaintiff does not—and cannot—allege "a sufficient likelihood that [she] will again be wronged in a similar way," as required for standing to pursue injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Indeed, Plaintiff is now indisputably aware of FlixBus' alleged use of the Facebook Tracking Pixel (as evidenced by her Complaint). Any future use of FlixBus' website in light of this knowledge will constitute consent to the use of that tool. Accordingly, Plaintiff lacks standing to pursue injunctive relief. *See Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *8 (S.D. Cal. Mar. 12, 2024) (dismissing injunctive relief claim for lack of Article III standing because plaintiff "now has notice of Defendants' use of" the website tool and her future use of the website "would constitute consent"); *In re: BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.,* 2023 WL 8458245, at *20–21 (E.D. Pa. Dec. 5, 2023) (same).

**B. Plaintiff Failed to Allege a Plausbile CIPA or Invasion of Privacy Claim**

**1. Standards For Motions To Dismiss Pursuant To Rule 12(b)(6)**

To survive such a 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In evaluating the complaint, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotations and citations omitted).

**2. The ICCTA Preempts All of Plaintiff's Claims**

The Interstate Commerce Commission Termination Act ("ICCTA") expressly preempts state laws "relating to intrastate rates, intrastate routes, or intrastate services of any . . . broker" ***or*** "related to a price, route, or service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(b)(1), (c)(1). Here, Plaintiff's claims are barred by the ICCTA's express preemption clause because they relate to FlixBus's "services."

**a. FlixBus is a "Broker" Under the ICCTA**

Under the ICCTA, a "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C § 13102(2). A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C § 13102(14). "A defendant may be either a motor carrier or a broker, but it cannot be both in the same transaction." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 579 (D. Md. 2022).

Here, FlixBus does not own any buses. Rather, as stated in its Terms and Conditions of Purchase:

/ /

/ /

/ /

/ /

> **Terms & Conditions of Purchase**
>
> Date: 06/20/2023
>
> **I. Introduction**
>
> FlixBus, Inc. ("Flix") is a broker of services and tickets which brings passengers and transportation together. Flix is not an operator or provider of any transportation services. Transportation services are provided by operators, including Greyhound Lines, Inc and its affiliates (collectively "Greyhound"). These Terms & Conditions of Purchase apply to all purchases made through Flix and travel provided by Bus Operators, including but not limited to Greyhound.

Maronati Decl. Ex. B at p. 1 (highlighting added). Accordingly, FlixBus is a "broker" under the ICCTA because it only "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C § 13102(2).

**b. Plaintiff's Claims Are Related to FlixBus' Services**

The statutory language of the ICCTA has been interpreted consistently with decisions interpreting the Airline Deregulation Act ("ADA"). *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). In *Morales*, the Supreme Court broadly interpreted the term "relating to" in the ADA as preempting "'[s]tate enforcement actions *having a connection with, or reference to*' carrier 'rates, routes, or services.'" *Rowe*, 552 U.S. at 370-71 (quoting *Morales*, 504 U.S. at 384). *Morales* also determined that "pre-emption may occur even if a state law's effect on rates, routes or services 'is only indirect.'" *Id.* (quoting *Morales*, 504 U.S. at 386). In *Rowe*, the Court held that the same broad interpretation applies to the "related to" language of 49 U.S.C. § 14501(c)(1)—the ICCTA.

*Fudge v. Delta Air Lines, Inc.*, 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) is on all fours. There, plaintiffs filed a class action complaint against Delta Air Lines, alleging Delta improperly disclosed consumers' personal information to Facebook while booking airfare on Delta's website in violation of Delta's privacy policy and the CIPA. *Id.* at *1. The data at issue allegedly included "the consumer's unique Facebook ID, departure date,

departure airport, arrival date, arrival airport, travel class, number of travelers, loyalty status, language, and currency used" and was shared with Facebook via the Facebook Tracking Pixel embedded on Delta's website. *Id.* at *1, *3.

Delta moved to dismiss, arguing plaintiffs' claims were preempted under the ADA, which provides: "no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law ***relating to*** rates, routes, or ***services*** of any air carrier." *Id.* at *3 (emph. added). The court agreed and dismissed on that basis, holding plaintiff's "allegations make apparent that their claims relate directly to Delta's air transportation ***services***." *Id.* at *4 (emph. added).

In reaching its holding, the *Fudge* court relied on Supreme Court precedent interpreting "services" in the context of ADA preemption as including an airline's frequent flyer program because it was connected to "access to flights" and analogous Ninth Circuit precedent holding "services" included "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Id.* at *3. The court further found plaintiffs' claims stemmed from their online purchase of Delta flights, "having provided their information specifically for the purpose of accessing the airline's air transportation services." *Id.* at 4. Therefore, the court reasoned the "connection between Plaintiffs' claims and Delta's services is clear." *Id.*

Here, Plaintiff alleges that she and other California consumers used FlixBus' website and provided FlixBus with their "personally identifiable information and details regarding her travel itinerary" to "book a bus ticket." Compl. ¶¶ 7, 62. Having allegedly given her information specifically for the purpose of FlixBus' services, the connection between Plaintiff's claims and FlixBus' "services" is clear as the connection between the plaintiff's claims and Delta's services in *Fudge*.

Given the connection between Plaintiff's claims and FlixBus' "services," Plaintiff's claims are preempted under section 14501(b)(1) to the extent it covers FlixBus' **intrastate** services. Although Plaintiff's personal claims stem from her **interstate** travel with FlixBus from Los Angeles to Las Vegas (*see* Compl. ¶ 7), her class

claims cover **intrastate** travel. Recall, Plaintiff seeks to certify a "class consisting of all persons in California who have a Facebook account and who booked travel arrangements from www.flixbus.com," without regard as to the class members' origin and destination cities. *Id.* ¶ 57. Stated differently, Plaintiff's complaint includes claims on behalf of class members that booked **intrastate** transportation (i.e., traveling from San Francisco, California to Los Angeles, California) and interstate transportation. As such, to the extent Plaintiff attempts to represent class members that only booked **intrastate** travel, she is preempted from doing so under section 14501(b)(1) because those claims are related to FlixBus' intrastate "services."

Furthermore, Plaintiff's personal and class claims are also preempted under section 14501(c)(1) of the ICCTA, because the claims pertain to FlixBus' "services" with respect to the transportation of "property." Although the term "property" in section 14501(c)(1) is not statutorily defined, courts have recognized that a state law can be preempted if it "impact rates, route, or services with respect to the transportation of **property incident to passenger travel**"—i.e., a passenger's baggage. *See Kozak v. Hillsborough Pub. Transp. Comm'n*, 695 F. Supp. 2d 1285, 1302 (M.D. Fla. 2010) (emph. added). Moreover, the passenger carrier regulations that the Federal Motor Carrier Safety Administration promulgates (under the ICCTA) define the term "baggage" as "**property** a passenger takes with him for his personal use or convenience." 49 C.F.R. § 374.303. Accordingly, the transportation of passenger baggage as part of the bus tickets FlixBus sells qualifies as "services" for the transportation of "property" under section 14501(c)(1) and, therefore, Plaintiff's claims are preempted because they are related to such services.

### 3. Plaintiff's Consent to the Alleged Data Practices Bars Her Claims

"[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019); Cal. Penal Code § 631(a) (prohibiting conduct that is "unauthorized," done "without the consent of all parties to the communication, or in any unauthorized manner").

Plaintiff cannot state a claim under Penal Code section 631 or the California Constitution for invasion of privacy because she failed to plead facts supporting her conclusory allegation that she "did not consent." Compl. ¶ 7. To the contrary, taking Plaintiff's allegations as true, she repeatedly consented to the challenged data practices, at a minimum, via (1) FlixBus' ticket purchase check-out process and (2) Facebook's Terms of Service.

**a. Plaintiff Consented to FlixBus' Privacy Policy and T&Cs**

Links to FlixBus' Terms and Conditions and Privacy Policy are always available at the bottom of FlixBus' website and, as Plaintiff admits, are available to customers during the ticket check-out process on FlixBus' website. *Id.* ¶ 50; Maronati Decl. ¶¶ 3-4. During the check-out process, purchasers must click on a check-box to "declare to have read the Privacy Policy and . . . agree to the T&C of Booking and T&C of Carriage." *Id.* Plaintiff did just that to purchase her ticket from FlixBus (assuming she actually did purchase a ticked on FlixBus' website as she alleges). Compl. ¶¶ 6-7.

Significantly, the Privacy Policy discloses the precise data practices that Plaintiff now challenges: that FlixBus and its "partners" (i.e., Facebook) "may use cookies, web beacons, embedded scripts, pixels, tags, session replay tools, SDKs, and other identification technologies . . . to identify, to locate or to profile you" and " which may include sending you an ad on a third-party service after you have left the [website] (i.e., "retargeting")." Maronati Decl. Ex. A. Similarly, the Terms and Conditions provide:

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

> **F. Consent to Use of Personal Data**
>
> Upon booking a ticket for transportation, purchasing other services, or participating in any Flix and/or Bus Operator program or service, you hereby authorize Flix, Bus Operators, and their affiliates and authorized agents to (i) collect, process, retain and use, and (ii) transfer to third parties, including, but not limited to, subcontractors, agents, affiliates, marketing partners, other carriers, and government agencies, for their use, processing and retention, any and all personal data you provide when Flix and/or Bus Operators believe in good faith that it is in the interests of security or that disclosure is otherwise necessary or advisable or as Flix and/or Bus Operators deem necessary to carry out any and all business purposes related to the program or services being requested and/or in the promotion of other information, goods, and services that may be of interest to you, including, but not limited to, the following purposes: making a reservation; purchasing a ticket; obtaining ancillary services, including accommodating special service requests; accounting, billing and auditing; checking credit or other payment mechanisms; systems testing, maintenance and development; customer relations; sales and marketing; promotions for Flix and/or its affiliates goods and services and third party goods and services; statistical analysis; developing and tailoring current and future services; facilitating travel, including obtaining immigration, security, and customs clearance; complying with applicable laws, regulations, government requests, law enforcement requests, and/or valid court orders; providing data to third parties or governmental or law enforcement agencies to comply with, or assist in the development of, security, safety, or health measures for passengers, baggage or cargo, or to provide for the prevention or detection of criminal acts or the apprehension or prosecution of offenders; protecting the legal rights of Flix, Bus Operators, and/or their affiliates.

*Id.* Ex. B at pp. 7-8 (highlighting added).[2]

A "reasonable user who viewed the [privacy] disclosures [would] have understood that [Facebook] was collecting" the exact type of information allegedly collected here. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (dismissing wiretap claims based on website operator's disclosure of alleged data collection practices); *see also, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–56 (N.D. Cal. 2017) (dismissing CIPA claim for failure to allege lack of consent based on plaintiff's agreement to website policies disclosing challenged data practices).

---

[2] The Court may consider FlixBus' Privacy Policy and Terms and Conditions in effect at the time of Plaintiff's alleged visit to FlixBus' website under the incorporation-by-reference doctrine because FlixBus' website and its contents are integral to Plaintiff's claims, including her allegation that she "did not consent" to the alleged data practices. Compl. ¶ 7; *see, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *3–4 (N.D. Cal. Dec. 24, 2020) (courts "routinely consider" the full contents of webpages to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (considering privacy policy that "contradict[ed] Plaintiff's claim that he was unaware of" the disclosure of personal information to third parties).

Plaintiff vaguely claims "consumers do not assent to Defendant's terms, as Defendant intentionally conceals and limits a consumer's opportunity to review them prior to booking travel accommodations on its Website." Compl. ¶ 56. Plaintiff is incorrect. Purchasers on FlixBus' website, including Plaintiff, are under no obligation to proceed with purchasing a ticket. Even if the website times out, they can simply take their time to read the terms and policies and start the check-out process over. Plaintiff's allegations implying she had no option but to proceed before she could review the terms is a red-herring.[3]

Contrary to Plaintiff's allegations, the links for the terms and policies are sufficiently conspicuous to put Plaintiff and others on inquiry notice. *See Ghazizadeh v. Coursera, Inc.*, 2024 WL 3455255, at *6 (N.D. Cal. June 20, 2024) (collecting cases). On the check-out page, the hyperlinked terms and policies are "blue, underlined," bolded," and the same size as other text on the page. *Id.* at *10; *see also* Compl. ¶ 50; Maronati Decl. ¶ 4. Moreover, the "notice is displayed directly below the action button" and "the hyperlink appears on a screen that is simple and lacks clutter—making the hyperlink more readily apparent." *Id.* On these facts, the ticket purchase check-out screen "satisfies the visual requirements to provide conspicuous notice that a reasonably prudent internet user 'would have seen' the hyperlink and would have been able to locate the hyperlinked" terms and policies. *Ghazizadeh*, 2024 WL 3455255, at *10. And, because "Plaintiff was 'presented with only [one] button,' located directly adjacent to the notice containing the hyperlink" to the terms and policies that clearly read "I declare to have read the Privacy Policy and . . . agree to the T&C of Booking and T&C of Carriage," Plaintiff unambiguously assented to such terms. *See id.* at *11; *see also* Compl. ¶ 50; Maronati Decl. ¶ 4.

**b. Plaintiff Consented to Facebook's Terms of Service**

"Plaintiff has actively maintained a Facebook account with Meta at all relevant

[3] Notably, Plaintiff fails to allege that she *did not* have an opportunity to review the website terms and policies before she purchased her bus ticket.

times prior to and after booking her ticket through the Website" (Compl. ¶ 6), which is "governed by [Facebook's] Terms of Service . . . to which all users must agree to create a Facebook account." *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *1 (N.D. Cal. Oct. 3, 2022). As *Lloyd* recognized, these Terms of Service "incorporate [Facebook's] Data Policy" disclosing to Facebook users (like Plaintiff) the same conduct alleged here: that Facebook "partners" like FlixBus "provide information" to Facebook "about your activities," including "information about . . . purchases" like Plaintiff's bus ticket purchases. *Id.* at *4, 10 (dismissing privacy claims based on disclosures in Facebook's Data Policy). Plaintiff's conclusory allegation that she did not consent to the challenged practices is contradicted by the Complaint's own allegations and materials incorporated by reference confirming that she did.

**4. Plaintiff's Class Claims are Barred by a Class Action Waiver**

Plaintiff is precluded from bringing a class action against FlixBus because she contractually waived her right to do so by agreeing to FlixBus' Terms and Conditions when she purchased her ticket. The Terms and Conditions provide: "Customers agree to waive any right to assert any claim against Flix and Bus Operators as a representative or member in any class or representative action." Maronati Decl. Ex. B.

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). FlixBus' terms of use fall in the "clickwrap" category.

Under California law, a clickwrap agreement "may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to

those terms." *Ghazizadeh*, 2024 WL 3455255 at *6 (citations and quotations omitted).

As discussed above, FlixBus' checkout page provided more than reasonable conspicuous notice of the terms to which Plaintiff would be bound. Plaintiff also unambiguously manifested her assent by clicking the check-box to confirm she "agree[s] to the T&C of Booking and T&C of Carriage." Therefore, the class action waiver must be enforced.

**5. Plaintiff Failed to Allege a Plausible CIPA Claim**

**a. Plaintiff's CIPA Claim is Barred by the Statute of Limitations**

The statute of limitations for a CIPA claim is one year per C.C.P. § 340(a). *See Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 98 (Ct. App. 1987); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021).

Plaintiff filed her Complaint October 2, 2024. She alleges "[i]n or around October 2023, Plaintiff visited the Website to book a bus ticket from Los Angeles, California to Las Vegas, Nevada." Compl. ¶ 7. Stated differently, Plaintiff's allegation indicates that she could have purchased her ticket on October 1, 2023 (or earlier) which is outside the one-year statute of limitations for CIPA claims. Accordingly, Plaintiff's CIPA claims is facially barred under the statute of limitations.

**b. Plaintiff Failed to Plead Sufficient Facts Showing FlixBus Aided and Abetted Facebook to Commit Wrongdoing**

As set forth in Plaintiff's Complaint, FlixBus' alleged liability under CIPA would be entirely derivative of an alleged interception by Facebook of alleged communications that Plaintiff claims were intended for FlixBus in the first place. *See* Compl. ¶ 155.[4]

---

[4] Indeed, Plaintiff does not—and cannot—pursue a claim under the first clause because "[t]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (collecting cases). Instead, Plaintiff is pursuing an "aiding-and-abetting" claim under the theory that Facebook violated the second clause (see Compl. ¶¶ 22–47, 57–78). All of the underlying allegations are directed against

Therefore, her claim against FlixBus turns on the fourth provision of CIPA where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Pen. Code § 631(a)(4). Even if Facebook had violated any provision of CIPA, Plaintiff must still plausibly plead facts showing how FlixBus actually aided and abetted any of Facebook's alleged wrongdoing.

CIPA lives in the California Penal Code (Cal. Penal Code § 631), the statutes defining criminal offenses and procedures. *See* Cal. Penal Code § 1. Within this framework, an aider and abettor of a crime is actually a "principal[] in any crime so committed." Cal. Penal Code § 31. As the California Supreme Court explained: "[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—**knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends**, and (c) the aider and abettor's actus reus—**conduct by the aider and abettor that in fact assists the achievement of the crime**." *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (emphasis added).

Although CIPA provides for a private (civil) right of action under Cal. Penal Code § 637.2(a), there is no statutory exception (or case law) suggesting that Section 631 as applied in criminal cases does not extend to civil cases brought under CIPA's private right of action, or that the legal standard for aiding and abetting should be loosened for such civil cases. After all, the CIPA lives entirely under the California Penal Code.

The California Supreme Court has clarified: "[A]n aider and abettor must have *criminal intent* in order to be convicted of a criminal offense." *People v. Beeman*, 35 Cal. 3d 547, 556 (1984). "[A]n aider and abettor's mental state must be *at least that required of the direct perpetrator." People v. McCoy,* 25 Cal. 4th 1111, 1118 (2001) (emphasis added). Aiding and abetting is a "specific intent" crime because it "refers to defendant's

---

Facebook; the sole factual allegation against FlixBus is that it installed the Pixel on its website. *See generally* Compl.

intent to do some future act or achieve some additional consequence." *People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). For such crimes, "one may knowingly assist another to commit a crime, yet lack a specific intent that the crime be committed." *Id.* (citations omitted). "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *In re Meagan R.*, 42 Cal. App. 4th 17, 22 (1996). "Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." *In re Lynette G.*, 54 Cal. App. 3d 1087, 1094 (1976). Here, Plaintiffs fail to plead ***facts*** sufficient to establish the key requirements of an aiding and abetting.

Specifically, Plaintiff failed to plead FlixBus (a) had any knowledge of Facebook's allegedly unlawful intent to intercept Plaintiff's alleged communications; (b) harbored an intent to help Facebook intercept any alleged communications; (c) had at least the same mental state as Facebook; (d) knew the "full extent of [Facebook's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Facebook's alleged commission of a CIPA violation; (e) engaged in conduct that assisted the achievement of the alleged CIPA violation, taking into account factors like presence at the scene of the violation, companionship, and conduct before and after the offense.

Plaintiff merely concludes that FlixBus violated CIPA by assisting "Facebook in intercepting personally identifiable information, as well as several details about consumers' travel itineraries, including the date of travel and location of travel." Compl. ¶ 32. These are legal conclusions, not well-pleaded facts under *Iqbal* and *Twombly*. And, Courts have held that similarly situated defendants "play[ed] no part in the exchange of data between Facebook and Plaintiffs." *Smith*, 262 F. Supp. 3d at 951.

**c. Plaintiff Failed to Plead Sufficient Facts Demonstrating a Communication Was Intercepted in Transit**

Plaintiff fails to plausibly allege that Facebook attempts to learn the "contents" of

any communication while "in transit," as required to state a claim. Cal. Penal Code § 631(a); *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) ("[T]he second clause only imputes liability when the defendant reads, or attempts to read, a communication that is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California.") (quotations and citations omitted). Courts have interpreted the "in transit" requirement "narrowly." *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered electronic storage." *Id*.

When Plaintiff allegedly entered her booking information on FlixBus' website, she claims that (1) Plaintiff's browser sends a "GET request" with that information "to Defendant's server"; (2) Facebook's "embedded code" on FlixBus' server then "sends . . . instructions back to [Plaintiffs'] browser"; and (3) those instructions "cause[] the browser to . . . duplicate" and "transmit[]" the booking information "to Facebook's servers." Compl. ¶¶ 28–29. Plaintiff further alleges that "**[a]fter** collecting and intercepting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences." Compl. ¶ 30 (emph. added). In other words, Facebook allegedly attempted to learn the information after the information reached FlixBus' servers, not while it was "in transit" to FlixBus' servers.

Analyzing virtually identical allegations, a California court held that plaintiffs failed to allege that the defendant website operator "attempted to learn of the information while in transit," because "the duplication and sending of Facebook's secret code happens after the requests reaches its destination ([Defendant's] server)." *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Jan. 05, 2023). That equally applies here.

#### d. Plaintiff Failed to Plead Interception of Protected Communication Content

To state a claim under Section 631(a), a plaintiff must allege that the defendant has

intercepted the "contents" of a communication. Here, the booking information Facebook allegedly collected also does not amount to "contents" of a communication within the meaning of CIPA.

"[C]ontents refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiff alleges that Facebook collected a literal record of her ticket purchase: her "personally identifiable information and details regarding her travel itinerary. Such details include the departure and return date, the origin and destination cities, and the number of travelers in her party." Compl. ¶ 7. "[N]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding plaintiff had not alleged that the tracking technology provider had intercepted "content" because keystrokes, mouse clicks, page views, shipping and billing information, date and time of visit, IP address, location, browser type, and operating system do not constitute "content" under section 631(a)).

A record of Plaintiff's purchase transaction is just that: record information. *Id.* at 1077 (dismissing CIPA section 631 claim for failure to plead "contents," where a third-party tool collected the plaintiff's information from a "purchase from Lululemon's website," including "shipping and billing information"). Although Facebook also allegedly collected Plaintiffs' "Facebook ID" (Compl. ¶ 38), the Ninth Circuit has squarely held that a "user's Facebook ID . . . does not meet the definition of 'contents.'" *Zynga Priv. Litig.*, 750 F.3d at 1107.

**6. Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution**

Plaintiff's claim for violations of her constitutional right to privacy fails as a matter of law. An invasion of privacy claim under the California Constitution requires plaintiff to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of

the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012).

As discussed above (Section III(A)(2), *supra*, Lack of Standing), Plaintiff's allegations regarding her "personally identifiable information" and travel itinerary is insufficient to establish a legally protected interest here.

Regarding whether a reasonable expectation of privacy exists, courts consider the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994). Here, FlixBus' alleged actions demonstrate Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information she provided to FlixBus because Plaintiff herself *intentionally* provided it to FlixBus. The use of third-party vendors for a variety of purposes is commonplace on the internet. Reasonable internet users recognize that when they input information on a website, the website operator "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). Where, as here, data is allegedly provided by the customer voluntarily to the retailer and collected for routine commercial purposes, Plaintiff cannot plausibly allege a reasonable expectation of privacy in the information she provided.

Furthermore, the alleged facts do not permit a reasonable inference that the conduct at issue constitutes an "egregious breach of social norms." Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. Indeed, "[t]he California Constitution and the common law set a high bar for an invasion of privacy claim." *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Courts find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim or disclosure of a patient's HIV status. *See, e.g., Catsouras v. Dep't of Cal. Highway Patrol,* 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226

Cal. App. 3d 1128 (1991).

Courts analyzing similar data privacy issues consistently hold that data collection and disclosure practices to third parties constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See Low*, 900 F. Supp. 2d at 1025 (LinkedIn's disclosure of users' browser history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.,* 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014 (Google's collection and disclosure of users' browsing histories was not highly offensive).

The conduct alleged in the Complaint falls far short of the "high bar" for an invasion of privacy claim. There are no factual allegations establishing anything that FlixBus may have done, or any information FlixBus may have transmitted to Facebook, that would demonstrate a "highly offensive . . . degree of [] intrusion," let alone allege sufficient "context" regarding FlixBus' "motives and objectives, the setting into which [it] intrudes, and the expectations of those whose privacy is invaded.'" *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 465 (9th Cir. 1997). The crux of Plaintiffs' allegations against FlixBus is that it embedded Facebook's proprietary tracking technology, which then allegedly used some unidentified information about users of FlixBus' public website to provide advertising about services that may be of interest to them. *See generally* Compl. Because Plaintiff failed to allege facts showing that FlixBus engaged in highly offensive conduct, it is appropriate for the Court to dismiss this claim with prejudice. *See Hammerling v. Google LLC,* No. 21-cv-09004-CRB, 2022 WL 17365255, at **8-9 (N.D. Cal. Dec. 1, 2022) (dismissing intrusion upon seclusion claim because the tracking of plaintiff's bank, where she kept her investments, what car she drove, where she reads her news, interests, use of apps, and that she was physically active is not highly offensive).

## IV. CONCLUSION

Plaintiff's Complaint should be dismissed without leave to amend as plaintiff lacks Article III Standing, her claim claims are preempted by the ICCTA, and she failed to either state a CIPA violation claim or invasion of privacy claim under the California

Constitution.

DATED: December 16, 2024

SEYFARTH SHAW LLP

By: */s/ Jesse L. Miller*
Jesse L. Miller
Afshin Najafi
Attorneys for Defendant
FlixBus, Inc.

**CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Defendant FlixBus, Inc., certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 16, 2024

SEYFARTH SHAW LLP

By: */s/ Jesse L. Miller*
Jesse L. Miller
Afshin Najafi
Attorneys for Defendant
FlixBus, Inc.